IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| C&R FORESTRY, INC., an Idaho corporation | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. CV 05-381-N-EJL-CWD |
| v. | ) ) ) | **REPORT AND RECOMMENDATION** |
| CONSOLIDATED HUMAN RESOURCES, AZ, INC., an Arizona Corporation, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**REPORT**

The Court has before it Liberty Defendants' Motion to Strike A Portion of the Affidavit of Roberto Oseguera (Docket No. 109) and C&R Forestry's Motion for Summary Judgment (Docket No. 102).[1] Having carefully reviewed the briefing submitted by the parties and the record, as well as holding oral argument on the motions, the Court recommends, for the following reasons, that

---

[1] The Liberty Defendants attempted to file a cross motion for summary judgment on the breach of contract claim, asserting that they did provide proper notice under the policy and state laws. However, the cross motion for summary judgment was deemed untimely and not considered (Docket No. 143). Therefore, the issue before the Court is whether summary judgment in C&R's favor is warranted. The Liberty Defendants also timely filed a Motion for Summary Judgment on the Promissory Estoppel Claim in C&R Forestry's Second Amended Complaint (Docket No. 91). However, at oral argument, C&R Forestry dismissed this claim without objection from the Liberty Defendants. An order (Docket No. 154) was entered dismissing the claim on June 27, 2008. Therefore, the Motion for Summary Judgment on the Promissory Estoppel Claim is no longer before the Court.

**REPORT AND RECOMMENDATION - 1**

Liberty Defendant's Motion to Strike be granted in part and denied in part, and that C&R Forestry's Motion for Summary Judgment be denied.

## I.
## Background and Facts.

C&R Forestry entered into a Client Service Agreement for leased labor services with Consolidated Human Resources Employer Services, Inc. ("CHR") around the Fall of 1999. Second Amended Complaint, Ex. A, Docket No. 57-2.  As part of this Client Service Agreement, CHR was responsible for obtaining and providing worker's compensation insurance coverage for all of the employees CHR leased to C&R Forestry.[2]  Second Amended Complaint, Ex. A at 2-3, Docket 57-2.  In accordance with this obligation, CHR sent requests to Liberty Defendants, the worker's compensation insurance carrier, to add C&R Forestry to several insurance policies.  Third Declaration of Hortensia San Miguel, Ex. A, Docket No. 120.[3]  Liberty Defendants issued a new policy, Policy WC 7-161-038293-759 ("Policy 759") which, according to its terms, covered C&R's activities in several states, including Missouri,[4] for the time period between December 20, 1999 and April 14, 2000.[5]  Decl. San Miguel, Ex. C, Docket No. 120. The expiration date of the policy was listed on the policy itself, and on the certificates of

---

[2] The agreement between C&R Forestry and CHR states that "CHR is primarily responsible for the following purposes: ...B. compliance with applicable workers compensation laws including but not limited to: (i) procuring workers compensation insurance; (ii) completing and filing required reports and (iii) administering claims..." Second Amended Complaint, Ex. A at 2-3, Docket 57-2.

[3] For ease of reference, citations to declarations and affidavits will be shortened after their first mention, for example, Third Declaration of Hortensia San Miguel will be referred to as Decl. San Miguel.

[4] The Policy covers states listed in 3A of the Information Page, in this case Arkansas, District of Columbia, Idaho, Maryland, North Carolina, Oregon, Utah and Virginia.  Additionally, Part Three of the policy covers the states listed in 3C which reads: "ALL STATES EXCEPT THOSE LISTED IN ITEM 3A AND THE STATES OF ND, OH, WA, WV, WY, and AK."  Decl. San Miguel, Ex. C at 8, Docket No. 120.

[5] The Court finds it interesting that Policy 759 was in effect for only approximately two months prior to Liberty Defendants' decision to nonrenew or cancel the policy.

**REPORT AND RECOMMENDATION - 2**

insurance sent to C&R Forestry and C&R Forestry's clients, as April 14, 2000.[6] Decl. San Miguel, Exs. C and F, Docket No. 120.

The provisions in Policy 759 dealing with nonrenewal and cancellation require notice, in certain circumstances, be given to the insured, or the person or entity listed in Item 1 of the Policy. The General Section of Policy 759 states that the Policy of Insurance is "a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page.)" It continues: "You are insured if you are an employer named in item 1 of the Information Page." Decl. San Miguel, Ex. C at 1, Docket No. 120. Further, the policy requires notice of nonrenewal and cancellation be given to the employer listed in Item 1, with the cancellation provision of the policy specifically stating that mailing notice to the address listed in Item 1 is sufficient.[7] Decl. San Miguel, Ex. C at 1, Docket No. 120. Item 1 of Policy 759 lists the insured as:

> Item 1. Name of Insured  ROBERTO OSEGUERA DBA
> C & R FORESTRY INC
> C/O CONSOLIDATED HUMAN RESOURCES INC
> Address  3031 W NORTHERN SUITE 171
> PHOENIX, AZ 85051

---

[6] There is an issue as to whether C&R Forestry was entitled to and received a copy of Policy 759; however, this issue, as noted by C&R Forestry in their reply brief, needs not to be addressed here because it is not specifically relevant to the breach of contract claim raised by C&R Forestry's Motion for Summary Judgment. Plaintiff's Reply to Liberty Defendants' Response to Plaintiff's Motion for Summary Judgment, p. 7, Docket No. 131.

[7] Generally, with respect to notice of cancellation, the policy states: "We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice." Decl. San Miguel, Ex. C at 7, Docket No. 120. Notice of cancellation is also required under the Amendatory Endorsements attached at the end of the policy. Decl. San Miguel, Ex. C at 18-22, Docket No. 120. In contrast, the only mention of notice of nonrenewal is found in the Virginia Amendatory Endorsement and states, "We will provide notice to you and to the Workers Compensation Commission of our decision to nonrenew." Decl. San Miguel, Ex. C at 41, Docket No. 120.

**REPORT AND RECOMMENDATION - 3**

On February 10, 2000, the Liberty Defendants sent a letter to Randy Bragg, an agent of CHR, advising him and CHR that Policy 759, as well as several other policies held by CHR and/or its other clients, would not be renewed due to an adverse loss history. Declaration of Thomas H. Johnson, Ex. B, Docket No. 20. This letter was not sent to the address listed in Item 1, but to CHR's last known address. Decl. Johnson, Ex. B, Docket No. 20. Liberty Defendants did not send any notice of either cancellation or nonrenewal to C&R Forestry directly. Affidavit of Roberto Oseguera, ¶ 14.2, Docket No. 102-5.

On April 20, 2000, six days after the expiration date listed on Policy 759, Pantaleon Vargas, an employee leased by C&R Forestry from CHR, was injured in a work related accident in Missouri. Mr. Vargas submitted a timely worker's compensation claim in Missouri and an award was entered in his favor against C&R Forestry and CHR. The Division found that no insurance coverage was provided to Mr. Vargas through any Liberty Mutual Insurance policy. This judgment has since been confirmed by a Circuit Court for Dent County, Missouri, and entered in Kootenai County, Idaho. C&R Forestry responded by filing this lawsuit in Kootenai County against CHR, Randy Bragg and Richard Jones as employees of CHR, and the Liberty Defendants, seeking indemnification for the worker's compensation judgment. The Liberty Defendants removed the action to this Court. After removal, default Judgment was entered against Richard Jones, Randy Bragg and CHR.

## II.
## Discussion

### A. LIBERTY DEFENDANTS' MOTION TO STRIKE

As an initial matter, the Court has before it Liberty Defendants Motion to Strike Portions of the Affidavit of Roberto Oseguera. In the Motion to Strike (Docket No.109), the Liberty

**REPORT AND RECOMMENDATION - 4**

Defendants are seeking to strike portions of Roberto Oseguera's Affidavit (Docket No. 102-5) based on hearsay, factual inaccuracy, lack of foundation, and speculation. The Court will address each argument in turn.

Rule 56(e)(1) of the Federal Rules of Civil Procedure requires affidavits submitted with a motion for summary judgment to be made on personal knowledge and to set forth facts that would be admissible in evidence. Hearsay not falling into any exception is inadmissible, and would appropriately be subject to a motion to strike. Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

First, the Liberty Defendants seek to strike a portion of paragraph 6 and paragraphs 7 and 8 in their entirety, arguing that they contain inadmissable hearsay and therefore are inappropriate under Fed. R. Civ. P. 56(e)(1).[8] Paragraph 6 states in part:

> Mr. Jones stated that, in addition to providing employee leasing services via CHR, Mr. Jones and CHR could, through his ongoing and special relationship with Liberty Mutual Insurance Company, provide workers compensation insurance throughout the United States at all locations in which C&R worked or anticipated working.[9]

Paragraphs 7 and 8 read as follows:

---

[8] The Liberty Defendants also spend significant amount of time arguing that the paragraphs do no fall into the admission by a party opponent exception. Motion to Strike, p. 3, Docket No. 109. However, based on the Court's conclusion that they are admissible for limited purposes, this argument is irrelevant.

[9] The full text of paragraph 6 reads as follows:
> During the conversation with Mr. Jones at plaintiff's Post Falls office, at which conversation the affiant and the affiant's wife, Carmen, were present, Mr. Jones stated that, in addition to providing employee leasing services via CHR, Mr. Jones and CHR could, through his ongoing and special relationship with Liberty Mutual Insurance Company, provide workers compensation insurance throughout the United States at all locations in which C&R worked or anticipated working. Aff. Oseguera, ¶ 6, Docket No. 102-5.

**REPORT AND RECOMMENDATION - 5**

> 7. Mr. Jones explained in substantial detail that he and CHR had a very large volume of business with Liberty and was authorized by them to place coverage with Liberty such that he could guarantee that Liberty would insure C&R Forestry throughout the United States.
>
> 8. Mr. Jones identified himself to me as a vice president of CHR and as a licensed insurance agent who represented and worked with Liberty Mutual. Aff. Oseguera, ¶ 7, 8, Docket No. 102-5.

Plaintiff responded by arguing that the statements contained in paragraphs 6, 7, and 8 are not hearsay under Rule 801(c), because they are not being offered to prove the truth of the matter asserted, i.e., that Jones is an agent of Liberty Defendants. Instead, the Plaintiff argues, these statements are being offered to show why Mr. Oseguera and C&R Forestry chose to contract with CHR. The Liberty Defendants replied by requesting that the Court limit the use of these statements to this purpose.

The Court agrees with the Plaintiff that paragraphs 6, 7, and 8 are not hearsay when offered for the purpose of showing the statements were made by Mr. Jones and relied upon by Mr. Oseguera in making the decision to contract with CHR and to work with Mr. Jones.[10] Therefore, the statements will be admitted and considered only for this limited purpose. The Court, in the following analysis of the Motion for Summary Judgment, has applied this limitation.

Next, the Liberty Defendants argue that paragraph 14.1 of Roberto Oseguera's Affidavit should be stricken because it is factually incorrect. As Plaintiff points out, a motion to strike based on factual inaccuracy is improper. Under Federal Rule of Civil Procedure 56(e)(2), setting forth the Opposing Party's Obligation to Respond, factual allegations should be opposed by affidavit. Therefore, the motion to strike paragraph 14.1 based on alleged factual inaccuracy is improper and is denied.

---

[10] As Judge Winmill noted, "It is the fact that the statements were made, and relied upon, that is the key rather than their literal truth." *Rock Creek Hydropower v. Enel North America Inc.*, CV 04-556-S-BLW.

**REPORT AND RECOMMENDATION - 6**

Finally, the Liberty Defendants seek to strike all three subparagraphs of paragraph 18 of Roberto Oseguera's Affidavit based on inadmissable hearsay, speculation, and improper foundation. Paragraph 18 reads as follows:

> Affiant has personally contacted the office of the Arkansas Director of Insurance and has ascertained that, had Liberty provided notice of non renewal of C&Rs insurance, the Department would have first verified that alternate coverage was not in place.
>
> In the event that alternative insurance had not been obtained, then in that event, the Department of Insurance would send a letter to C&R informing them that they had ten (10) days to obtain alternative insurance.
>
> C&R received no such letter; had C&R received this notice it would have been able to place alternative coverage with one or more carriers with which C&R had previously done business. Aff. Oseguera, ¶ 18, Docket No. 102-5.

The first two paragraphs relating to statements allegedly made by the Arkansas Worker's Compensation Commission are clearly hearsay and should not be admitted. If C&R Forestry wished the Court to consider this information in its motion for summary judgment, it should have provided an affidavit from the Arkansas official.

The third paragraph is admissible, as it is not hearsay and is based on the personal knowledge and opinion, albeit speculative, of Mr. Oseguera.

## B. C&R's MOTION FOR SUMMARY JUDGMENT ON THE CONTRACT CLAIM

### 1. Arguments of the Parties

C&R Forestry alleges that summary judgment is appropriate on the breach of contract claim because the Liberty Defendants failed to give proper notice of cancellation and/or nonrenewal of Policy 759 to C&R Forestry, contending that C&R Forestry is the insured, or at least one insured, listed in Item 1 of Policy 759. Memo. In Support of Plaintiff's Motion for Summary Judgment (Contract Claim), p.2, Docket No. 102. Further, C&R Forestry argues that

Liberty Defendants failed to give notice to state agencies as required under the Amendatory Endorsements included with the policy as well as various applicable state laws, and that, if the state agencies had been properly notified, C&R Forestry would have received notice from a state agency or agencies of the non renewal of the policy and would have been able to secure coverage with another insurer.  Memo. In Support, Docket No. 102.  Also, due to the lack of notice, C&R Forestry contends the policy was still in full force and effect when Mr. Vargas was injured and Liberty Defendants are responsible for payment of the judgment against C&R Forestry.  Memo. In Support, Docket No. 102.

The Liberty Defendants respond by arguing that all the notice that needed to be provided to state agencies or to CHR, as the insured listed in Item 1, was in fact provided in accordance with the policy.  Memo. Of Points and Authorities in Response to Plaintiff's Motion for Summary Judgment, Docket No. 123.  Therefore, to determine whether summary judgment is appropriate, the Court must analyze: 1) whether Liberty Defendants were required to give any notice to the insured listed in Item 1 under the terms of Policy 759; and 2) if notice was required, whether C&R Forestry was entitled to either notice of nonrenewal or cancellation from Liberty Defendants under the language of Policy 759. [11]

### 2. Legal Standards Governing Motion for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed.

---

[11] As noted in footnote 6, much of the briefing by both parties addresses C&R Forestry's claim that Liberty Defendants violated Idaho Code §41-1824 by not providing a copy of the complete policy to C&R Forestry. However, as recognized above, there is no need to discuss this matter further at this time.

**REPORT AND RECOMMENDATION - 8**

R. Civ. P. 56(c).

A moving party must show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that in order to resist a motion for summary judgment,

> the non-moving party: (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-

REPORT AND RECOMMENDATION - 9

moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

### 3. Choice of Law

Prior to analyzing the motion for summary judgment on the breach of contract claim, it is necessary to determine which state's body of law should be applied. This issue was not addressed by either party in the briefing; however, during oral argument, both parties agreed that application of Idaho law is appropriate. Based on the analysis below, the Court agrees.

A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state to determine which law applies. *J&J Celcom v. AT&T wireless Services Inc.*, 215 Fed. Appx. 616 2006 WL 3825343 (9th Cir 2006). Idaho applies the most significant relationship test in resolving conflict of law issues as set forth in RESTATEMENT (SECOND) CONFLICTS OF LAWS , although it has not adopted the Restatement formulation in full. *Barber v. State Farm Mut. Ins.*, 931 P.2d, 1195, 1199 (Idaho 1997). *See also Grover v. Isom*, 53 P.3d 821 (Idaho 2002); *Rungee v. Allied Van Lines, Inc.*, 449 P.2d 378 (Idaho 1968); *DeMeyer v. Maxwell*, 647 P.2d 783 (Idaho Ct. App. 1982). "The goal of this test is to identify the state most significantly related to a particular issue and to apply its law to resolve that issue." *Suebert Excavators Inc. v. Anderson Logging Co.,* 889 P.2d. 82, 85 (Idaho 1995).

The issue in the instant case is a breach of contract claim. Therefore, in determining which state has the most significant relationship to the contract, the Court is required to examine: 1) the domicile, residence, nationality, place of incorporation, and place of business of the parties; 2) the place of negotiations of the contract; 3) the place of contracting; 4) the place of

performance; and 5) the location of the subject matter of the contract.  RESTATEMENT (SECOND) CONFLICTS OF LAWS § 188 (1971).  Specifically when dealing with an insurance contract, the Restatement provides the following guidance:

> The validity of a contract of fire, surety or casualty insurance and rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the transaction and the parties, in which the local law of the other state will be applied. *Id*. at § 193.

Further, the comments to Restatement Section 193 provide that the rule of this Section applies to contracts of worker's compensation insurance. *Id*.

Once the factual contacts between the parties are identified, the court then conducts an analysis to determine which state has the most significant relationship to the transaction by considering the following policies:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 (1971); *see also Rungee v. Allied Van Lines, Inc.*, 449 P .2d 378, 383 (Idaho 1968) (citing the Restatement).

In the instant case, application of the above factors is inconclusive, as the parties reside in several different states, Policy 759 covers work performed in several states, and it is unclear where the negotiation and signing of the contract occurred.  However, examining what the Restatement deems to be the most important factor in choice of law analysis of insurance

**REPORT AND RECOMMENDATION - 11**

contracts, the principal place of the insured risk under Policy 759 is Idaho. This is supported by several facts, including: 1) the Liberty Defendants' contention at oral argument that Policy 759 was the master policy for the state of Idaho; 2) C&R Forestry's headquarters are located in Idaho; and 3) the judgment entered in Missouri has been recognized in Idaho. Therefore, despite contacts with other states, Idaho has the most significant relationship to the issue at hand and Idaho law should be applied.

### 4. The Merits of C&R Forestry's Summary Judgment Motion Regarding the Breach of Contract Claim

#### a. Idaho Contract Law

When interpreting insurance policies, Idaho courts apply the general rules of contract law subject to certain special canons of construction. *Arreguin v. Farmers Insurance Co of Idaho,* 145 Idaho 459, 180 P.3d 498 (2008) *citing Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 540, 66 P.3d 242, 244 (2003). The primary objective in construing a contract is to give effect to the intent of the parties. *Bondy v. Levy*, 829 P.2d 1342, 1345 (Idaho 1992). To achieve this objective, the contract must be construed and considered in its entirety. As stated in the Idaho Code: "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application lawfully made a party of the policy." I.C. §41-1822. Where the language of a contract is clear and unambiguous, the interpretation and legal effect of a contract are questions of law. *Bondy*, 829 P.2d at 1346. Whether a contract is ambiguous is a question of law. *Id.*

An insurance policy is ambiguous if it is "reasonably subject to differing interpretations." *Arreguin*, 180 P.3d at 501, *citing Armstrong v. Farmers Ins. Co. Of Idaho,* 143 Idaho 135, 137,

**REPORT AND RECOMMENDATION - 12**

139 P.3d 737, 739 (2006). If the contract is ambiguous, the interpretation of the terms presents a question of fact and is not a matter to be resolved on summary judgment. *Arreguin*, 180 P.3d at 502, *citing Moss v. Mid-America Fire & Marine Ins. Co.*, 103 Idaho 298, 302, 647 P.2d 750, 758 (2004); I.R.C.P. 56(c). The general rule, given that insurance contracts are generally contracts of adhesion, is that any ambiguity existing in the contract must be construed against the insurer. *Arreguin,* 180 P.3d at 500*, citing Farmers Ins. Co. Of Idaho v. Talbot,* 133 Idaho 428, 431, 987 P.2d 1043, 1046 (1999) (internal citations omitted).

### b. Policy 759 Requires Liberty Defendants to Give Notice to the Insured

As noted above, the first issue the Court must address in examining the motion for summary judgment is whether Liberty Defendants were required, under the terms of Policy 759, to give notice to the insured in the event the policy was either cancelled or not renewed. In examining the plain language of the policy, the Court finds that notice was required in either case.

Policy 759 unambiguously requires notice to the insured listed in Item 1 in the event of cancellation of the policy. The general provision of the policy states: "[W]e may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect." Decl. San Miguel, Ex. C at 7, Docket No. 120. Further, "you" is defined in the policy as "the employer named in Item 1 of the Information Page." Decl. San Miguel, Ex. C at 1, Docket No. 120. Additionally, the Amendatory Endorsements, included in the insurance policy under Idaho Code §41-1822 and the terms of the policy itself, contain state specific requirements for cancellation in Arkansas, Maryland, North Carolina, Oregon, Virginia, and the District of Columbia.[12] Decl. San Miguel, Ex. C at 18-22, Docket 120. Under each of

---

[12] Idaho Code also requires notice of cancellation to be filed with the industrial commission and served on the other party to the contract sixty (60) days prior to cancellation or non renewal of the policy, if the policy provides coverage for more than one hundred and eighty (180) days. I.C. §72-311. However, because the term of Policy 759

**REPORT AND RECOMMENDATION - 13**

these provisions and amendatory endorsements, Liberty Defendants were required to send notice of cancellation to the employer named in Item 1 of the Information Page.

The general rule regarding nonrenewal is that the insurer has no duty to give notice of a policy's expiration date /nonrenewal absent a policy or statutory provision to the contrary. AMJUR INSURANCE §395. In contrast, Policy 759 requires notice of nonrenewal. The Virginia Amendatory Endorsement states: "We will provide 30 days notice to you and to the Workers Compensation Commission of our decision to nonrenew." Decl. San Miguel, Ex. C at , Docket No. 120. The Court finds that this provision is sufficient to require Liberty Defendants to send notice of nonrenewal to "you," the employer listed in Item 1 because Virginia is covered by Policy 759. Decl. San Miguel, Ex. C at 8, Docket No. 120. This conclusion is consistent with the Liberty Defendants' comments at oral argument, informing the Court that notice of nonrenewal was required,[13] as well as the policy underlying the requirement for notice of nonrenewal - ensuring peace of mind for a policyholder in relying on the insurance policy despite any desire by the insurer to cancel or not renew without sufficient notice. AMJUR INSURANCE §395; see also *Potlatch Grain and Seed v. Millers Mut. Fire Ins. Co.*, 138 Idaho 54, 57 P.3d 765 (2002).[14]

The Court recognizes that a further issue exists as to what kind of notice, nonrenewal or cancellation, the insured would have been entitled to under Policy 759. This stems from confusion of the use of the terms nonrenewal and cancellation by the Liberty Defendants and

---

was less than 180 days, this provision is not specifically applicable.

[13] This is despite the fact that counsel for Liberty Defendants later attempted to retract this admission.

[14] The *Potlatch* case deals with Idaho Code §41-1842 which, by its terms, does not relate to worker's compensation insurance; however, the underlying policy, to prevent a lapse in insurance by providing the insured adequate time to obtain replacement coverage, is applicable by comparison.

**REPORT AND RECOMMENDATION - 14**

C&R Forestry at oral argument, in testimony, and in documents submitted to the Court.[15] The issue is further complicated by the Idaho worker's compensation statute's failure to distinguish between notice of cancellation and notice of nonrenewal. Instead, it requires notice of cancellation to be provided to the insurance commission and the other contracting party, regardless of whether the policy is cancelled or not renewed. *See* I.C. §72-311. Nonetheless, this issue does not need to be decided here, as summary judgment is inappropriate based on the ambiguity in the language of Policy 759 regarding "who" was entitled to notice.

### c. Summary Judgment in Favor of C&R Forestry is Inappropriate as Identification of the Insured in Item 1 is Ambiguous

Based on the law discussed above, summary judgment is appropriate in favor of C&R Forestry only if no genuine issue of material fact exists regarding who was entitled to receive notice of nonrenewal or cancellation under the terms of Policy 759. In other words, if Policy 759 unambiguously provides for notice of either nonrenewal or cancellation to be sent directly from Liberty Defendants to C&R Forestry at its address in Post Falls, summary judgment in favor of C&R Forestry may be appropriate. After examining the language of the Policy, however, the Court concludes that there are at least two reasonable conflicting interpretations of the language of Policy 759 as it relates to Liberty Defendants' obligation to provide notice. Summary judgment must be denied.

As mentioned above, Policy 759 defines the insured as "an employer named in item 1 of

---

[15] For example, Mr. Johnson stated in his Declaration,
> 4. This policy was not renewed and was in fact cancelled effective April 14, 2000.
> 5. Attached as Exhibit B is a true and correct copy of the letter of February 10, 2000.... with attachments, showing cancellation of policies with Consolidated Human Resources and C&R Forestry. Decl. Johnson, ¶¶4-5, Docket No. 20.

Additionally, a "Policy Cancellation Notice" was attached to Johnson's Declaration which identifies the type of cancellation as "Not Renewed" and lists the Cancellation Effective Date of 4/14/2000. Decl. Johnson, Ex. A, Docket No. 20.

**REPORT AND RECOMMENDATION - 15**

the Information Page." C&R Forestry asserts that, because "Roberto Oseguera dba C&R Forestry" is listed first in Item 1, C&R Forestry is either "the insured" or at least one of two insureds under Policy 759 and therefore entitled to receive notice from Liberty Defendants. This argument appears to be based on language in Policy 759 that states: "The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation," as well as the definition of insured as "an employer listed in Item 1." Decl. San Miguel, Ex. C, Docket No. 120.

C&R Forestry's position that they are the insured entitled to notice is also supported by Idaho Code §72-301 which requires C&R Forestry, as an employer, to maintain worker's compensation insurance in the state of Idaho, as well as the policy underlying portions of the Idaho Code and notice requirements in general - protecting employers and employees from lapses in insurance coverage by providing them the opportunity to obtain replacement insurance. AMJUR INSURANCE §395; see also *Potlatch Grain and Seed*, 57 P.3d 765.

The Court agrees that this is not an unreasonable interpretation of the policy language; although, the Court is concerned about C&R Forestry's failure to address the meaning of the term "C/O" in Item 1 of the Information Page. In contrast, Liberty Defendants focus their argument on the meaning of "C/O" in the context of Item 1. Liberty Defendants argue that inclusion of "C/O" is unambiguous and means that CHR was the insured entitled to receive notice on behalf of C&R Forestry, and therefore no notice needed to be provided to C&R Forestry directly.[16] The Court disagrees.

---

[16] This is despite Liberty Defendants' counsel admitting at oral argument that both CHR and C&R Forestry were insureds under Policy 759. In Liberty Defendants' briefing, they also admitted that C&R Forestry was an insured on Policy 759; however, the insurance contract was between Liberty Defendants' and CHR. Memo. In Response, p.6, Docket No. 123.

**REPORT AND RECOMMENDATION - 16**

>   The plain meaning of "C/O," or care of, is:
>
>   Care of, usually abbreviated as C/O on envelopes signifies an intermediary who is responsible for transferring a piece of mail between the postal system and the final addressee.  For example when the addressee has no standard address, is under a corporate mail system, or is being manually fowarded mail sent to a more accessible location.  Wikipedia, *available at* http://en.wiktionary.org/wiki/care_of

Based on the above definition, it would be reasonable to conclude that, pursuant to the terms of the policy, C&R Forestry was not entitled to notice directly from Liberty Defendants at their address in Post Falls, Idaho.  Instead, C&R Forestry may have been entitled to notice from Liberty Defendants only after notice had passed through CHR's hands.  This conclusion is bolstered by other language in the policy, including: 1) the listing of CHR's previous address in Item 1 under the name of the insured; and 2) the language in the Oregon Endorsement indicating that C&R Forestry is a client company of CHR instead of the insured listed on the policy. Decl. San Miguel, Ex. C, Docket No. 120.

Thus, even if C&R Forestry is correct that they are "the" or "an" insured under the Policy, Policy 759 does not unambiguously require notice to be sent directly from the Liberty Defendants to C&R Forestry.  However, the policy language also does not unambiguously support the conclusion that only CHR was entitled to notice from Liberty Defendants.  Therefore, the Court cannot grant summary judgment as requested by C&R Forestry and extrinsic evidence of the parties' intent and their interpretation of the contract language must be presented by the parties, and considered by the fact finder, to resolve the notice issue.

**REPORT AND RECOMMENDATION - 17**

## RECOMMENDATION

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY RECOMMENDED** that:

1)  The Liberty Defendants Motion to Strike (Docket No. 109) be granted in part and denied in part as outlined above in this Report; and

2)  C&R Forestry's Motion for Summary Judgment on the breach of contract claim (Docket No. 102) be denied.

DATED: July 15, 2008

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 18**